IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>v.<br><br>ALVIN THOMAS,<br><br>　　　　Defendant. | CRIMINAL ACTION NO.<br><br>1:07-cr-0028-JEC |

**ORDER & OPINION**

　　This case is before the Court on Plaintiff's Motion for Return of Property [17]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that Plaintiff's Motion for Return of Property [17] should be **DENIED**.

**I.　BACKGROUND**

　　Alvin Thomas, the defendant in the above criminal case, seeks the return of property that was administratively forfeited almost five years prior to his filing of this present motion. A broad overview of the procedural background of this case is as follows.

　　Beginning around February 2004 and continuing until May 2006, defendant Thomas engaged in a narcotics trafficking conspiracy that had ties to both Pittsburgh, Pennsylvania, in the Western District of

Pennsylvania, and Atlanta, Georgia, in the Northern District of Georgia. (Pl.'s Resp. [18] at 1.)  According to the indictment from the Western District of Pennsylvania, the defendant transported controlled substances from Atlanta to Pittsburgh.  Defendant pled guilty to the Pennsylvania charges in 2010, and was sentenced to 20 years in prison.

According to the indictment filed in the Northern District of Georgia, the defendant structured and laundered the proceeds of a drug trafficking conspiracy in violation of federal law. (*Id.*)  That indictment was dismissed after defendant had been sentenced to 20 years imprisonment in Pennsylvania.

As the overlap between the Pennsylvania and Georgia cases is pertinent to the underlying issue in the present motion, a more detailed breakdown of the chronology of events is necessary. Specifically, after learning of defendant's criminal activities, federal law enforcement agents began an investigation. (*Id.* at 2.) The Western District of Pennsylvania was the first to strike, when, on August 30, 2006, a grand jury there returned a three-count indictment against claimant, charging him with conspiring, between 1998 and August 28, 2006, to distribute cocaine, and with actually distributing cocaine on May 23, 2006 and on July 21, 2006.  This indictment contained "forfeiture allegations," in which the Government sought to forfeit defendant's real property at Kenmare

2

Hall in Atlanta Georgia and one million dollars. *See U.S. v. Thomas*, 2:06-cr-299-GD (W.D. Pa.)("Pa. Docket") at Indictment [5]. Defendant was subsequently taken into custody in Pennsylvania. (*Id.* at Dkt. No. [20].)

On the same day as the Pennsylvania grand jury returned its indictment, federal law enforcement agents in Atlanta applied for, and received from a magistrate judge in the Northern District of Georgia, seizure warrants for the following properties located within the Northern District of Georgia and belonging to claimant: One 2001 BMW X-5, VIN WBAFB33511LH06567; $118,669.06 in funds maintained in Wachovia Securities account number XXXX-0309; $37,055.91 in funds in Bank of America account number XXXX-7179; $579.66 in funds in Bank of America account number XXXX-7636; $46,977.64 in funds in Wachovia Bank account number XXXX-4870; and $1,053.20 in funds in Washington Mutual Bank account number XXXX-919-5 (collectively, "the subject properties"). (Pl.'s Resp. [18] at 2-3 and Pl.'s Supplemental Resp. [20] at 1.)

Shortly after obtaining the warrants, these federal agents seized the subject properties and began administrative forfeiture proceedings. Specifically, between September 22 and October 13, 2006, the Government, acting through the Department of Homeland Security, sent notices of the seizures to defendant in care of the attorney representing him in his Pennsylvania drug trafficking case

and to defendant at his home address in Atlanta. (*See* Pl.'s Ex. 1 at ¶¶ 3-9 and Pl.'s Exs. 2-7, attached to Pl.'s Resp. [18]; Pl.'s Second Exs. 1-3, attached to Pl.'s Supplemental Resp. [20].) Pursuant to 19 U.S.C. § 1607, the notices advised defendant that the properties had been seized, were subject to forfeiture, and informed him of his available options. (*Id.*) These notices were confirmed delivered to their respective addresses. (*Id.*) The Government also published notice in the Atlanta Journal Constitution for the requisite amount of time. (*Id.*) After no claims were filed with respect to the subject property prior to the applicable deadlines, they were administratively forfeited beginning in November 2006 and ending in January 2007. (Pl.'s Ex. 1 at ¶¶ 10-14; Pl.'s Second Ex. 1 at ¶¶ 6-7.)

Also, in January 2007, a grand jury in the Northern District of Georgia returned a 65-count indictment charging defendant with money-laundering and structuring transactions pertaining to "monies generated by the sale and distribution of controlled substances." *U.S. v. Thomas*, 1:07-cr-28-JEC ("Ga. Docket") [1] at 1. The indictment contained a forfeiture provision that sought to forfeit all money and property that represented the proceeds of this money-laundering/structuring activity and all property that had been used to facilitate commission of these offenses. (*Id.* at 12.) This provision specified two pieces of property in Atlanta, Georgia: the

4

same Kenmare Hall property specified in the Pennsylvania indictment, real property at Willis Mill Road in Atlanta, and "[a] sum of money equal to the total amount of money involved in each offense."[1] (*Id.* at 12-13.)

The docket indicates that defendant never made an appearance in the Northern District of Georgia, presumably because he was in custody in the Western District of Pennsylvania. Instead, on November 17, 2008, a Consent to Transfer Jurisdiction [10] was filed on behalf of defendant to allow him to enter a guilty plea in the Western District of Pennsylvania, pursuant to FED. R. CRIM. P. 20, to the Georgia charges. Defendant apparently changed his mind, as the case was sent back to Georgia on December 15, 2008, with the notation that defendant had refused to plead guilty in Pennsylvania. (*Id.* at [13].) Shortly thereafter, the Government filed a memorandum indicating that it would not attempt to writ the defendant into Georgia until the charges in Pennsylvania had been resolved. (*Id.* at Docket Entry for Jan. 28, 2009.)

On February 23, 2010, defendant pled guilty in the Western District of Pennsylvania to one charge of conspiracy to distribute and possess with intent to distribute five kilograms or more of

---

[1] Adding up the amounts of money set out in the 65-count indictment, they indicated that the defendant structured and deposited $971,419.76 in money. As noted, the Pennsylvania indictment had sought a money judgment of one million dollars, representing the proceeds of defendant's drug trafficking activity.

cocaine, and to two charges of distribution of five kilograms or more of cocaine. (Ga. Docket, Pl.'s Resp. [18] at 3-4; Pa. Docket [253].) He was sentenced to 20 years imprisonment in September 2010. Thereafter, in December 2010, the Government dismissed the pending charges against the defendant in the Northern District of Georgia. (Ga. Docket [15, 16].)

On July 27, 2011, approximately four and one-half years after the subject properties had been administratively forfeited, defendant sent a letter to this Court[2] requesting the return of the subject property. (Ga. Docket, Mot. for Return of Seized Property [17].) Construing the letter as a motion for return of seized property, the Court directed the Government to file a response. (*Id.*, July 27, 2011 Minute Order.) As the docket reflects, the parties have filed several briefs on the matter since then.

## II. DISCUSSION

### A. APPLICABLE STANDARD

As noted, the defendant, Mr. Thomas, initiated this particular litigation by sending the undersigned a letter asking for the return of the BMW vehicle and the monies in his bank accounts that, as described above, had been seized by ICE agents in Atlanta, Georgia in the fall of 2006. He filed the letter under the docket number of his

---

[2] The judge to whom the case had originally been assigned had retired.

6

closed Georgia criminal case--1:07-cr-28-JEC--and the Court construed his letter as a motion for return of property.

As set out above, the forfeiture to which defendant Thomas now objects was completed prior to his indictment in Georgia, which indictment was dismissed prior to the defendant ever having made an appearance in Georgia on the case.  The Government has not objected to using the criminal case as a vehicle for litigating defendant's motion nor argued that a motion to return property is inapt where an individual is trying to undo the administrative forfeiture of assets. Nevertheless, as has become clear upon the Court's review of the parties' briefing, defendant's motion cannot properly be considered under FED. R. CRIM. P. 41(g), which permits a person aggrieved by an unlawful search and seizure to move for the return of the property. Rather, when seized property has been forfeited, a claim under 18 U.S.C. § 983(e)[3] provides the exclusive remedy for a litigant trying to get his property back.  *United States v. Garza*, 486 Fed. App'x 782, 784 (11th Cir. 2012).  The Court therefore considers defendant to have made a claim under that statute,[4] and, accordingly, for the

---

[3] Section 983(e) if part of the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA").

[4] The Court does not fault defendant Thomas for choosing the wrong procedural vehicle to pursue relief.  He was candid at the outset about his uncertainty as to the proper method of litigating his request, and he asked for guidance and correction if he had chosen the wrong method.

7

remainder of this Order he will be referenced as "the claimant." *See United States v. Quezada*, 439 Fed. App'x 824, 827 (11th Cir. 2011) (one can construe liberally a *pro se* motion brought pursuant to Rule 41(g) as being brought pursuant to § 983(e)).

Indeed, the parties agree as to the applicable standard for considering claimant's motion.  That is, as the Government has noted, a district court's review of an administrative forfeiture is limited to determining whether the Government violated the claimant's due process rights in obtaining the forfeiture.  The Court cannot determine whether forfeiture was warranted, on the merits.  *Id.* Further, § 983(e) is "the exclusive remedy for seeking to set aside a declaration of forfeiture under a civil forfeiture statute." *Mesa Valderrama v. United States*, 417 F.3d 1189, 1196 (11th Cir. 2005), citing 18 U.S.C. § 983(e)(5), which applies to all forfeiture proceedings commenced on or after August 23, 2000.

To prevail in a challenge under § 983(e), a claimant must show that (1) "the Government knew, or reasonably should have known, of the moving party's interest and failed to take reasonable steps to

---

The Court will, however direct the Clerk to assign a civil number to this action to insure that it is properly reflected as a civil action.  The Clerk will continue to docket the actual pleadings in this case in the criminal case file.  This is the protocol used with § 2255 motions, which also receive a civil number, but the pleadings in the § 2255 action are docketed in the underlying criminal file.

provide such party with notice," *and* (2) "the moving party did not know or have reason to know of the seizure within sufficient time to file a timely claim."  18 U.S.C. §§ 983(e)(1)(A)-(B).  Due process does not demand that the claimant actually have received the notice, as long as the Government employed the best means possible to ensure notice.  *United States v. Davenport*, 668 F.3d 1316, 1323 (11th Cir. 2012).  Rather, it requires "'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"  *Mesa Valderrama*, 417 F.3d at 1196-97 (citation omitted).  On the other hand, if the claimant was actually aware of the impending forfeiture, even if the Government's efforts to notify him were lax, then a claimant cannot show that his due process rights were violated.

   **B.   DID CLAIMANT THOMAS KNOW ABOUT THE IMPENDING FORFEITURE PROCEEDING PRIOR TO THE ACTUAL ADJUDICATION OF FORFEITURE?**

As noted above, a key question in this inquiry is whether the claimant was aware of a pending forfeiture[5] in enough time to file a

---

[5] Claimant does not dispute that he was aware that his property had been seized by federal officers in 2006, but argues that he was unaware of the impending forfeiture proceeding scheduled thereafter. (Def.'s Resp. [21] at 15.)  As noted, the operative language of § 983(e) focuses on whether the claimant knew or had reason to know of "*the seizure* within sufficient time to file a timely claim." 18 U.S.C. §§ 983(e)(1)((B)(emphasis added).  Claimant here certainly knew about the initial seizure, but he argues that, notwithstanding the above language, it is knowledge of the impending forfeiture that

9

claim contesting this action.  If the claimant was so aware, it will not matter whether he was actually served or whether the Government's efforts to serve him with notice were sufficiently diligent.

Here, claimant Thomas had at least two possible means for learning of the Government's efforts to forfeit his property.  First, the Government had sent notices of forfeiture to his last residential address.  Claimant had just been arrested on the Pennsylvania charges, however, and he was not living at this home when the notice was sent.  A "Johnnie Thomas" was living there, though, and she signed for these notices.  Accordingly, it is possible that Ms. Thomas, whom the Government indicates to be claimant's sister, could have informed him of the notices and their content.

Second, the Government sent notices to claimant in care of the attorney representing claimant on his federal Pennsylvania charges: Thomas Livingston.  According to the docket in the Pennsylvania case, claimant made an initial appearance on those charges on September 13, 2006 (Pa. Docket at [21]) and the first record of Mr. Livingston's representation occurs on September 15, 2006, when the latter filed a

---

is required. He supports this argument with a citation to a district court case that so holds. *See United States v. Huggins,* 607 F. Supp. 2d 660, 666-668 (D. Del. 2009). *Huggins,* in turn, relies on a First Circuit case that likewise so holds. *See Gonzalez-Gonzalez  v. United States*, 257 F.3d 31, 38 (1st Cir. 2001).

The Government has not attempted to dispute this contention by claimant, and the Court finds it persuasive.

10

motion to postpone the detention hearing and arraignment (*id*. at [25]).  Four different notices of forfeiture were addressed to claimant and sent in care of Mr. Livingston to his office address between September 22 and October 13, 2006.  All of these notices were signed for by someone in Livingston's office.  (*See* Pl.'s Resp., Ga. Docket [18].)

Mr. Livingston therefore was representing the claimant at the time he received these notices of forfeiture, and continued doing so for almost two more years, only withdrawing from the representation on June 6, 2008.  (Pa. Docket at [123] and [126].)  It would be reasonable to think that Mr. Livingston mentioned one or more of these notices to his client.  After all, the facts underlying the Georgia and Pennsylvania cases were entwined as the Pennsylvania case involved allegations that claimant had been a large-scale drug distributor in the Pittsburgh area and that, in May, 2006, over $400,000 had been carried back to the claimant in Atlanta in payment for a drug delivery.  (Pa. Docket, Guilty Plea Hearing [258] Feb. 23, 2010 at 23.)  The Pennsylvania indictment further sought a judgment of one million dollars representing the proceeds of claimant's drug trafficking activities.

The Georgia case charged claimant with 65 counts of currency structuring activities involving almost a million dollars.  Clearly, the Georgia and Pennsylvania law enforcement officers had been

11

coordinating their activities, as the same day that the Pennsylvania grand jury indicted claimant, federal officers in Georgia obtained seizure warrants to seize monies found in several of claimant's bank accounts.

Accordingly, given the overlap in the two investigations and the forfeiture clauses in both indictments seeking almost a million dollars from the claimant, one could reasonably infer that these notices of forfeiture in Georgia would have attracted some interest by Livingston and that he would have mentioned them to his client, the claimant.  Moreover, the Court's review of the record in the Pennsylvania case indicates that it had been a long-standing concern of the claimant that the Government had purposely seized plaintiff's assets in order to deprive the claimant of the resources necessary to retain counsel, thereby forcing him to accept appointed counsel. Certainly claimant knew that, prior to his arrest, he had money in these Georgia bank accounts.  One might expect that he would have been trying to get to that money or find out what had happened to it in order to provide him with more options as to counsel.

The above assumptions might be reasonable, but that does not mean that they are accurate.  Claimant has provided an affidavit in which he declares, under penalty of perjury, that he had neither notice nor knowledge of the pending forfeiture proceedings.  The affidavit goes on to specifically state that neither his Pennsylvania

12

attorney, Mr. Livingston (to whom the Government had sent the forfeiture notice) nor Johnnie Thomas (whom the Government says was living in claimant's home at the time the notice was sent there), had informed claimant of these notices. This assertion means that claimant has met his prima facie burden of providing evidence that he was not actually aware of the impending forfeiture proceedings.

Given the inapt posture of this case as a criminal matter, neither party requested discovery nor attempted to file a motion for summary judgment, and the Court did not direct that either party file a dispositive motion. At this juncture, the Court could give the Government an opportunity to depose Johnnie Thomas and Thomas Livingston to test the accuracy of claimant's assertions. Yet, even if one of these people contradicted claimant's assertion and stated that he or she had informed the claimant of the notices, there would be a disputed issue of fact that would require an evidentiary hearing. For the reasons set out below, the Court intends to hold a hearing on the question of the relatedness of the two cases. That being so, discovery on this one issue would further delay resolution of the case. Given the claimant's desire to avoid any further unnecessary delays, the Court will not suspend the case for discovery--unless the claimant seeks discovery--and will instead set down a hearing date on this and all other factual matters at issue.

### C.   DID NOTICE TO CLAIMANT'S PENNSYLVANIA ATTORNEY SATISFY THE GOVERNMENT'S DUTY TO TAKE REASONABLE STEPS TO PROVIDE THOMAS WITH NOTICE?

If claimant did not know or have reason to know of the impending forfeiture of his property, then the Government must show that it took reasonable steps to provide the claimant with notice. *Supra* at 8-9.  While the Government did send notice to claimant's last address, the Government does not disagree with claimant's contention that this was inadequate because the Government well knew that the claimant was in jail when those notices would have been received. That conclusion leaves the Government with only one other available way to demonstrate that it provided adequate notice of the claimant of the forfeiture proceeding: that sending the notices to claimant's Pennsylvania attorney constituted a reasonable step to provide claimant with notice.

Rule G governs forfeiture action. *See* FED. R. CIV. P. SUPP. R. G(1) ("This rule governs a forfeiture action in rem arising from a federal statute.") Rule G provides that:

> Notice may be sent to the potential claimant **or to the attorney representing the potential claimant** with respect to the seizure of the property or **in a related investigation**, administrative forfeiture proceeding, **or criminal case**.

Rule G(4)(b)(iii)(B).  Notice sent to a party's attorney, even where the attorney only represents the party in a pending and related proceeding, satisfies due process. *United States v. Davenport*, 668

14

F.3d 1316, 1323 (11th Cir. 2012)(collecting circuit cases).

Because sending notice to claimant's attorney in a related case is permissible and because the Government clearly sent notices of forfeiture of the subject property to claimant's counsel in his Pennsylvania criminal case, the only remaining question is whether claimant's criminal case in Pennsylvania and the forfeiture proceedings in Georgia were sufficiently related.

Notwithstanding claimant's suggestions to the contrary, there was clearly a relationship between the subject matter of the criminal case in Pennsylvania and the subject matter of the administrative forfeiture proceeding.  The criminal conspiracy, to which claimant pled guilty, had ties to both Pittsburgh, Pennsylvania, and Atlanta, Georgia, and the Government's seizure of the subject properties was predicated on those criminal activities.  Indeed, claimant's criminal charges in Atlanta were only dropped after his Pennsylvania plea. The Government asserts that both a trial in the Pennsylvania criminal case and a hearing on the administrative forfeiture proceeding would have involved identical parties, identical witnesses, identical facts, and identical circumstances, as the Government would have needed to establish the same conduct in both matters: claimant's actions within a criminal enterprise.  *See also* 18 U.S.C. § 981(g)(4) ("In determining whether a criminal case . . . is 'related' to a civil forfeiture proceeding, the court shall consider the degree of

15

similarity between the parties, witnesses, facts, and circumstances involved in the two proceedings, without requiring an identity with respect to any one or more factors.")[6]

While the Court suspects that the Government is right in its assertion, as it makes sense in the context of these two matters, it would have been nice if the Government had provided better support for this assertion, other than just the Government's say-so. Nevertheless, there is sufficient evidence in the record before the Court, as well as the record in the Pennsylvania case, which the Court has also reviewed, to indicate some relationship between the two matters.

For his side, the claimant relies on statements made by the Pennsylvania prosecutor that claimant argues indicate that the two cases were unrelated. (*See* Claimant's Reply [26] at 24.) But in this isolated statement, which was made merely to address the claimant's complaint about the seizure of his assets in Atlanta, the prosecutor seemed to be suggesting that she had no control over that seizure or those assets and that the matter was not properly before the district court in the Western District. Other than this, the claimant offers little to support an inference that the two matters were unrelated.

---

[6] Although § 981 regulates judicial civil forfeitures, the standard listed in subsection (g)(4) provides guidance for non-judicial forfeitures as well.

Nevertheless, the question of the relatedness of the two proceedings creates a fact-intensive inquiry that has not been satisfactorily answered by either the Government or the claimant's briefing. For that reason, the Court will conduct an evidentiary hearing (1) specifically, as to whether the two matters were sufficiently related and (2) generally, as to whether Rule G(4)(b)(iii)(B) was satisfied here.[7]

### III. SCHEDULING OF EVIDENTIARY HEARING

The Court schedules an evidentiary hearing for **THURSDAY, AUGUST 22, 2013, 10:30 a.m.** The Government is responsible for preparing the necessary paperwork to writ the claimant into this district for that hearing.

Claimant has suggested in some of his pleadings that the Court should suggest that the Government attempt to settle this matter. That appears to the undersigned to be a good idea. The Government's application for forfeiture warrants indicated its expectation that there would be much more money in the claimant's bank accounts than there turned out to be. In fact, according to the Court's rough

---

[7] Even if the Government does not wish to pursue an argument that claimant was actually notified by virtue of counsel Livingston's providing him with the notices that Livingston received, for completion of the record, the Court would like to hear from Livingston on this matter. See discussion *supra* at 10-13. And if Livingston did not provide claimant with notice, the Court would like to hear his explanation as to why he did not do so.

17

math, the Government only recovered a little more than $85,000 from these bank accounts.  While that is not an insignificant amount of money, the Government may want to consider how much in litigation costs it will expend in litigating the present motion and, if it loses that motion, in litigating the merits of the forfeiture petition.

On the claimant's side, even if he succeeds in having this Court vacate the forfeiture order, his victory only means that he has the opportunity to receive a hearing adjudicating the forfeiture on the merits.  *See* 18 U.S.C. § 983(e)(2)(A)(if a court sets aside the declaration of forfeiture based on inadequate notice to the claimant, the Government shall be permitted to commence a subsequent forfeiture proceeding).  Albeit the Court's knowledge of the underlying facts is necessarily limited, it is reasonable to infer that if the evidence were sufficient to persuade the claimant to plead guilty to the Pennsylvania drug charges, knowing that he would receive at least a 20-year mandatory-minimum sentence, it is likely going to be sufficient to persuade the administrative judge that the monies at issue in the Georgia structuring case were derived from these drug activities.

The period of time between issuance of this order and the hearing should be adequate to obtain the presence of the claimant, as well as to give the Government and claimant an opportunity to discuss

18

a settlement.

## **CONCLUSION**

For the foregoing reasons, the Court sets an evidentiary hearing on the criminal defendant/forfeiture claimant's Motion for Return of Property [17]. This hearing is scheduled for **THURSDAY, AUGUST 22, 2013, 10:30 a.m.** In the interim, the Court encourages the parties to attempt to settle this matter.

The Clerk is directed to open a civil action and to docket the criminal defendant/forfeiture claimant's Motion for Return of Property [17] as the initiating document in that civil case. *See supra* at 7-8, n.3. Just as with a § 2255 motion, all pleadings shall remain filed in this criminal case file and any future pleadings shall likewise be filed there. The civil case shall contain the initiating document and ultimately the Court's ruling on this motion, and shall reference the present criminal case as a related case. The Court will permit the claimant to proceed *in forma pauperis*, without the payment of any filing fee. Should the Government object to that status, it should make that objection within **14 days.**

SO ORDERED, this <u>1st</u> day of JULY, 2013.

<u>/s/ Julie E. Carnes</u>
JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)